**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.**

IVAN RADI,

      Plaintiff,

v.

AMMANN AMERICA, INC.,
a Florida corporation,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff, IVAN RADI ("Plaintiff" or "Mr. Radi"), by and through undersigned counsel,

hereby sues Defendant, AMMANN AMERICA, INC., ("Defendant" or "Radi") and alleges:

## **PARTIES**

1.     Plaintiff is an individual who resides in Miami-Dade County, Florida.

2.     Defendant is a corporation located at 1125 SW 101 Street, Davie, Florida.

3.     Defendant is, by its own description, a "world-leading supplier of mixing plants,

machines and services to the construction industry with core expertise in road building and

transportation infrastructure."

4.     Defendant has a bare minimum of 15 employees, and, upon information and

belief, far more.

5.     Defendant employed Plaintiff as its Chief Financial Officer, from May 21, 2018,

through October 30, 2019.

:

## JURISDICTION AND VENUE

6.     This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e *et seq.* (Title VII).  This Court has jurisdiction under 28 U.S.C.A. § 1343(4), 42 U.S.C.A. § 2000e-5(f), and pursuant to the supplemental jurisdiction of this court, over all nonfederal causes of action under 28 U.S.C.A. § 1367.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C.A. § 139 (b)(2), as a substantial part of the events giving rise to the claims occurred in the Southern District of Florida, and pursuant to 28 U.S.C.A. § 1391 (b)(1), as both parties reside in Florida.

8.     Plaintiff has exhausted all administrative remedies.  All conditions precedent to the filing of this action have occurred or have been waived, or their performance is otherwise excused.   Plaintiff has received a right to sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as Exhibit "A."

## FACTUAL ALLEGATIONS

9.     With no notice whatsoever, on October 30, 2019, Ammann fired Mr. Radi, then age 55, as Chief Financial Officer without cause, after enduring eighteen months (since before his official hire on May 21, 2018) of abusive, hostile policies and degrading comments toward people of Hispanic origin (and other minorities).

10.     The degrading comments and abusive policies were recited explicitly, openly, without hesitation, and even **in writing via a series of emails from upper management – Plaintiff's suprervisors.**   The comments were more than petty, occasional, or passive insults, but rather constant expressions of deep-seated hostility toward people of Hispanic origin – hostility that was in fact *implemented* as part of Ammann's business practices and <u>official company policy.</u>

:

11.     In addition to exposure to the hostile atmosphere, Ammann, as a matter of course, paid Hispanic management and employees far less than their non-Hispanic peers.   As expected, in the weeks following Mr. Radi's firing, he was replaced by a white CFO, with the preferred German or Swiss/German pedigree matching that of his Swiss supervisor, Sascha Seglias, and his supervisor, Lieven Van Broekhoven, who was ultimately responsible for making hiring decisions and rendering orders on behalf of Ammann in the region.   Then, within 90 days of Mr. Radi's firing, one of the few remaining Hispanic executives was fired, and another resigned, leaving approximately three Hispanic employees out of 19.

12.      Mr. Radi, born in Colombia, had been a U.S. citizen for ten years at the time of his firing.  At all times material, he had a Master's degree in Business Administration, was fluent in English and Spanish, and had (until his firing by Ammann) a stable, unblemished work history, with over 30 years of experience.  Most of his career had been spent working for one company over 25 years, from 1989 through 2014.

13.     Mr. Radi has and had a specialized expertise in enterprise resource management related to the cement, coal, and building-material industry.

14.     During Mr. Radi's time working for Ammann, he earned a base salary of $150,000 and received two bonuses of $22,500 each -- the maximum bonus that he was eligible to receive. His total compensation package, including salary, family health insurance, car allowance, vacation pay, and earned bonus, was approximately $220,000.

15.     During Mr. Radi's 18 months as Chief Financial Officer at Ammann, he was never once the subject of an "attention call," a "write-up," or other such reprimand for poor performance. In fact, to the contrary, he was twice recognized at events held by Ammann's parent company at

3

:

global events.  Specifically, he was one of three people chosen to make a presentation at a global financial conference held June 27, 2019, which assembled all CFO's for Ammann's affiliated companies.  At that conference, he was singled out for congratulatory recognition by a global corporate CFO.  Likewise, the following day, he participated in Ammann's first global human resources conference, where he presented the results obtained and was again publicly congratulated, by Marcel Jenni, the global corporate head of human resources.

16.     Under Mr. Radi's watch, Ammann's U.S. operation expanded exponentially.  Mr. Radi supervised the completion (in a matter of five months) of a massive remodeling project for Ammann's U.S. headquarters building that had been stalled for one year under previous management – requiring Ammann to pay rent for a 17,000 square foot headquarters that it could not use for no other reason than prior management's lack of competence.  (Although the building had been leased since 2017, one year later, work had not even begun under the supervision of Mr. Radi's predecessor).

17.     Mr. Radi routinely worked weekends and even *voluntarily* worked on paid leisure/vacation days to accomplish his tasks.  Mr. Radi gladly took on all of the myriad additional responsibilities demanded of him, including:

- Overhauling the budget for the renovation of Ammann's U.S. headquarters
- Managing cash flow, payments, and financial agreements
- Negotiating with architects and contractors
- Securing compliance with city and county permitting requirements
- Supervising the renovation and ensuring timely progress thereof
- Selecting and replacing service providers
- Selecting and acquiring office furniture and work equipment
- Supervising and paying contractors
- Designing and implementing administrative controls and procedures
- Implementing human resource controls and procedures

4

:

- Overseeing all IT systems and procedures

18.     Mr. Radi's clear accomplishments, the complete absence of complaints, the accolades given him at two conferences by executives of Ammann's parent corporation, the bonuses paid to him, and the systemic discrimination and wholesale mistreatment of Hispanics by Ammann (in its U.S. operations), make clear that that there was no *bona fide*, non-pretextual reason for his firing.  Rather it is as it appears:  At the very top of its U.S. organization, led by Mr. Van Broekhoven, Ammann was deeply hostile toward Hispanics (notwithstanding subsequent clean-up efforts in anticipation of litigation).   Ammann's policies toward Mr. Radi and others are a deliberate result of that hostility.

## PARTICULAR INSTANCES OF DISCRIMINATION

19.     A sampling of particular instances of discrimination are as follows:

### FIRST INSTANCE OF DISCRIMINATION: DEGRADING COMMENT, APRIL 2018

20.     The first instance of discrimination took place before Mr. Radi's official start date (May 21, 2018). During the week of April 23, 2018, Mr. Radi was asked to travel to Cologne, Germany for a global sales meeting with Mr. Radi's supervisors at the time:  Mark Medeiros (Regional Director for North and South America) and Sascha Seglias, Corporate Group Controller. At that time Mr. Seglias made the following statement to Mr.  Radi:

> **"I hope you are punctual in the delivery of financial information since I have the impression that in Latin culture, punctuality is not one of your strengths."**

21.     Since this was the first anti-Hispanic comment Mr. Radi heard, he minimized it or brushed it off as perhaps a poor attempt at humor or jest.  Eager to begin his new position without

:

strife, Mr. Radi disregarded this one instance.  He could not have imagined at the time that the comment was reflective of a culture of anti-Hispanic discrimination that would reveal its face more and more over Mr. Radi's time with Ammann.

**SECOND ACT OF DISCRIMINATION:  DEGRADING COMMENT, NOVEMBER 2018**

22.     In November, 2018, Mr. Radi attended a "progress meeting" at a restaurant in Davie, Florida with Lieven Van Broekhoven (Vice President of Sales).  Evidently pleased with Mr. Radi's performance, Mr. Van Broekhoven remarked (in some sort of twisted attempt at a backhanded compliment):

**"Well, it seems that Latinos are not as lazy and disorganized as it seems."**

**THIRD ACT OF DISCRIMINATION:  DECEMBER 2018 HIRING DISCUSSION RE:  MOISES HERNANDO**

23.      In December, 2018,  Mr. Radi was asked to embark on a hiring search to fill the position of After Sales Director.  One candidate responded, who clearly met the hiring criteria: Moises Hernando.  Mr. Hernando was clearly well-qualified, having worked for ten years with Komatsu in the United States, and meeting or surpassing all job criteria.

24.     Initially, Mr. Radi's supervisors did not want to hire Mr. Hernando despite Mr. Radi's recommendation to the contrary.  On December 18, 2018, Mr. Radi and his supervisors had a hiring meeting at the Hampton Inn Hotel.  They discussed the After Sales Director position, which had still not been filled.

25.     Mr. Radi brought up Mr. Hernando's name again.     At that time, **Mr. Van Broekhoven questioned whether a Latino person could manage the U.S. Market efficiently.**

6

:

26.     Mr. Radi confirmed that Mr. Hernando was indeed well-qualified, and ultimately Mr. Van Broekhoven reluctantly hired Mr. Hernando despite his Hispanic background.

### FOURTH ACT OF DISCRIMINATION:   DECEMBER 2018   HIRING OF CFO ASSISTANT AND FINANICAL ASSISTANT POSITIONS

27.      Beginning in December, 2018, Ammann, through its upper management, began to put in writing the type of discrimination outline above.

28.     In December, 2018, Mr. Van Broekhoven assigned Mr. Radi the task of searching for candidates to fill the positions of CFO Assistant and other financial assistant positions.

29.     Mr. Radi interviewed six people for the position.  He then narrowed the field down to two candidates, whose qualifications he found most impressive:  **MARIA BALLESTAS** and **CLAUDIA ANTELO.**

30.     On December 19, 2018, Mr. Radi sent an email to Mr. Van Broekhoven summarizing Ms. Ballestas' and Ms. Antelo's qualifications and recommending them for the positions.  Mr. Radi's  email reads:


> Hi Lieven,
>
> Last week I interviewed 6 persons for the positions mentioned above.
> I choose the best two candidates and share with Gilvan and Mark, both agree.
> Our intention is to hire them for the third week of January.
> Attached please find their resumes and my impressions:  .  .  .

:

31.     A copy of Mr Radi's December 19, 2018, email to Mr. Van Broekhoven is attached hereto as **Exhibit "B."[1]**

32.     At 2:42 p.m. on December 19, Mr. Van Broekhoven responded to my email stating:

> **"Also, we cannot have only Latino's.  Need balance."**

33.     A copy of the email from Mr. Broekhoven is attached hereto as **Exhibit "C.**

34.     Then, in an a "high importance" email on December 20, 2018, at 5:38 a.m., Mr. Pereira yielded to Mr. Van Broekhoven's admonition regarding Hispanic candidates, stating in relevant part:

> **"Considering the Latino comment I ask Ivan to review the other candidates**, so we avoid having too much individuals non US in the company."

35.  A copy of the December 20, 2018, email is attached hereto as **Exhibit "D."**

36.  On January 9, 2019, at 9:13 a.m., Mr. Van Broekhoven sent yet another email to Mr. Radi, Ms. Pereira and Mr. Medeiros, again emphasizing **the need to bar Hispanics** from the positions.  The  email included the following dictates:

> ▪ **"New hire is to be 'American'. Knowledge of Spanish is 'nice' but is not needed."**

and

> ▪ **"Once we are up and running, and if [sic] only if the need arises, we can hire a second support person.  This person shall also be American."**

37.     A copy of the January 9, 2019, email is attached hereto as **Exhibit "E."**

---

[1] Markings by Sharpie, on all email attachments, are added.  Bolded text in quotations herein is for emphasis.

:

38.    As a result of the top-down admonitions, and for no other reason than that they happen to be of Hispanic origin, Ammann barred the too-Latin **MARIA BALLESTAS** and **CLAUDIA ANTELO** from further consideration.  In no uncertain terms, Mr. Radi was instructed to hire another person who should be **<u>a U.S. citizen without a "Latin" name.</u>**  The company ultimately hired Joann Olivier, who is not of Hispanic origin or descent.

### <u>FIFTH ACT OF DISCRIMINATION: JANUARY 2019 ELECTRICAL ENGINEER HIRING SEARCH INVOLVING JUAN RODRIGUEZ</u>

39.    As of January, 2019, Ammann was in the midst of a year-long search for an electrical engineer.   Mr. Van Broekhoven instructed that Mr. Radi and his colleague, Jan Thomschke (who had knowledge of engineering), travel to Orlando to evaluate candidates.

40.    Mr. Thomschke evaluated the candidates' knowledge, while Mr. Radi evaluated other areas.

41.    Mr. Thomschke and Mr. Radi agreed that out of three candidates interviewed, Mr. Juan Rodriguez was the best qualified person.

42.    Mr. Thomschke sent an email to the supervisors summarizing the interviews and our recommendation, stating:

> Dear All,
>
> After having yesterday and today the three scheduled interviews with:
> -   Juan Rodriguez
> -   Mitchell Alexander
> -   Shawn Orlena
>
> Ivan and myself decided relatively fast, that Juan Rodriguez is the right candidate.  He is open-minded and hungry to do a challenging job as an Electrical Eng.  The whole conversation was good and we are sure the [sic] he fits in the North American Engineering Team.  .  .  .

:

[See email of January 18, 2019, attached hereto as **Exhibit "F"**].

39.    When Mr. Radi spoke with Mr. Van Broekhoven in person regarding the consensus that Mr. Rodriguez was the best, most-qualified candidate, Mr. Van Broekhoven became irate, stating:

**"Oh!  Another Latino!? .  Was Rodriguez hired?"**

**SIXTH ACT OF DISCRIMINATION:   JUNE 2019 HIRING FOR COLD CALL POSITION**

40.     Mr. Van Broekhoven had given Mr. Radi and Gilvan Pereira the task of hiring a cold call representative for Ammann.  It was made clear that the hire was not to be of Hispanic origin, and, in fact, when presented with candidates with Latin names, Mr. Broekhoven repeatedly rejected those names and ordered Mr. Radi to start the search anew.

41.     In a series of emails, Mr. Van Broekhoven and Mr. Pereira made clear – again in no uncertain terms -- that the new employee was to be a **"native American,"  "American from American origin," who "speak[s] absolutely fluent English," and that "[n]o accent was to be accepted."**

42.     An email, dated June 10, 2019, from Ms. Pereira to me reads:

:

As discussed last week we need to increase our efforts to accelerate our penetration in the Plants business in the US.

Based on this as discussed please accelerate selection of an Intern, or a low cost person, to be exclusively dedicated to make cold calls and try to schedule meetings for Esquivel and Devonshire.

**Must be native American, and speak absolutely fluent English. No accent to be accepted.**

If you have any doubt please let me know

Best Regards

Gilvan

43.        A copy of the email of June 10, 2019, attached hereto as **Exhibit "G."**

44.        Two days later, on June 12, 2019, Mr. Van Broekhoven, again emphasized the

NO HISPANICS policy, making it abundantly clear that the employee **"MUST BE AMERICAN**

**FROM AMERICAN ORIGIN"** and that his dictates, including his NO HISPANICS dictate must

<u>not</u> be "purposely ignored" (emphasis added).

45.        The email from Mr. Van Broekhoven instructing management to only hire

"American[s] from American Origin" reads in full:

To ensure we do not end up with another hire that was not planned or a situation where instructions were purposely ignored:

- we are looking for a temp worker for cold calls to asphalt producers in USA
- can be a student
- **must be American from American origin**
- role is temporary
- no title, no employment, no benefits.
- On monthly contract basis only.  A set weekly rate all inclusive.
- We are not hiring a receptionist
- We are not hiring a marketing person
- We are not hiring an accounting person

11

:

> Cost agreed upfront by Gilvan before we offer anything
>
> Contract to be signed by 2 persons.

46.     A true and correct copy of the email of June 12, 2019, is attached hereto as **Exhibit "H."**

47.     Mr. Radi's firing was a product of Ammann's policy of discrimination against employees of Hispanic national origin and, in addition, constituted an act of retaliation for Mr. Radi's resistance to Ammann's policy against hiring people of Hispanic national origin or ethnicity.

48.     Mr. Radi's consistent position of treating existing employees and evaluating potential employees without regard to their ethnic origin (and his failure to exclude candidates solely because they may be Hispanic or have a Hispanic accent or name) posed a direct conflict with Mr. Van Broekhoven, who exercised ultimate decision-making with respect to personnel and hiring decisions in the United States.

49.     It is apparent that Mr. Radi was fired because of Mr. Broekhoven's particular, and obvious, animus toward people of Hispanic background, regardless of the parent company's purported policies, and Mr. Broekhoven's displeasure with Mr. Radi's disregard for Ammann's policy.

50.     In addition to particular instances of discrimination against people of Hispanic national origin, as delineated with particularity above, Ammann clearly had policies of systemic discrimination evident in the ethnic makeup of their employee workforce and the disparate salaries given Hispanic executives in contrast to non-Hispanic employees.

:

51.     A spreadsheet (salary information redacted for purposes of the complaint) listing all of Ammann's employees as of my firing on October 30, 2019, is attached hereto as **Exhibit "I"** and shows clear underrepresentation of the Hispanic community as of Mr. Radi's firing (notwithstanding subsequent "cleanup" work in anticipation of litigation).

52.      As of Mr. Radi's firing, Ammann had a total of 21 employees.   Of those, six (or 28.5%) were Hispanic, namely:

> Ivan, Radi (Colombia)
> Hernando, Moises (Peru)
> Esquivel, Moises (Honduras)
> Rodriguez, Juan (Mexico)
> Sandoval, Nelson (Colombia)
> Remigi, Raul (Nicaragua)

53.     The firing of Mr. Radi ushered in a purge of Hispanic employees.

54.     Mr. Radi was fired and replaced with a white male of apparent German heritage: Jeffrey Kummler.

55.     During the week of January 17, 2020, "After Sales Product Manager" Moises Hernando resigned, and Area Sales Manager Moises Esquivel, a Hispanic executive who had been with another company for eight years, and the company's only expert in asphalt plants, was fired with no (pretextual or purported non-pretextual) reason given.

56.     Notably, Mr. Esquivel had complained of Huey Song (Mr. Van Broekhoven's wife) reprimanding him and colleagues when they spoke Spanish in the lunchroom, stating that "This is an American company and all employees must speak English all of the time."

:

57.     The elimination of these two Hispanic employees, in addition to the firing of Mr. Radi and replacement with a white male of German heritage, left Ammann with only three remaining Hispanic or Latino employees.

58.     As Ammann was left with 19 employees, after the Hispanic purge, the company had **15% of its employees of Hispanic nationality** in a county (Broward) with a 27% Hispanic population -- **a dramatic under-representation.**

59.     The purge of Hispanic employees began at the very first moment it could have occurred as a practical matter.  Before the hiring of Mr. Radi, Ammann lacked employees with the most basic competence to complete the buildout of its new headquarters in anything resembling a timely manner.

60.     Before Mr. Radi's hiring, the company's existing employees utterly failed in bringing the buildout project to fruition, instead allowing the project to languish for years and incurring, at a minimum, hundreds of dollars in fixed costs for a headquarter building that Ammann could not use.

61.     Mr. Radi's diverse expertise brought a complete reversal of the stalled project, and, in fact, by the time of his firing, Mr. Radi had ensured that the new building was one hundred percent functional.

62.     While the building project was ongoing, Mr. Radi was indispensable -- notwithstanding his Hispanic origin and indisputable accent, which Ammann clearly considered a handicap.

:

63.     Upon the completion of the building, however, the one barrier to firing Mr. Rami on account of his ethnicity was dispensed with.  He was promptly fired, followed by the prompt purge of Ammann's existing Hispanic employees.

## UNDERCOMPENSATION OF HISPANIC EMPLOYEES

64.     In addition to underrepresenting Hispanic employees, as a matter of course, and across the board, Ammann, as of the time of Mr. Radi's firing, paid employees of Hispanic national origin dramatically less than similarly situated non-Hispanic peers in the company.

65.     MOISES HERNANDO (After Sales and Product Support Director), before his resignation, had an annual salary that was approximately two-thirds of that of TOM OLSON (Distribution Director) with a same level job and similar experience.  TOM OLSON was paid 50% more than his similarly situated Hispanic colleague, MOISES HERNANDO.

66.     JUAN RODRIGUEZ (Electrical Engineer) had an annual salary approximately 20% less than his two similarly situated non-Hispanic colleagues, Matthew Frahm and Devin Gulley (Mechanical Engineers).   The non-Hispanic employees receive a salary 22% greater than their similarly situated Hispanic peer.

67.     RAUL REMIGI (Service Engineer) had an annual salary of 9% less than his non-Hispanic similarly situated colleague, David Rhoten (also a Service Engineer).

68.     MOISES ESQUIVEL (Sales Manager), before being fired without cause during the week of January 17, 2020, had an annual salary $20,000; $10,000; and $6,000 less than his non-Hispanic Sales Manager peers, respectively, Chris Neilsen, Tom Devonshire, and Paul Lavenberg.

:

69.     On average, a non-Hispanic sales manager was paid nearly 10% more than the company's only Hispanic sales manager.

70.     The salary differential between Hispanic and non-Hispanic employee compensation was across-the-board.

71.     As a result of Mr. Ammann's intentional discrimination, Mr. Radi was left unemployed for over two years, despite continuous diligent efforts to obtain employment. Ultimately, he obtained new employment in January, 2022, for reduced compensation.


## COUNT I:

## DISCRIMINATION BASED ON ETHNICITY OR NATIONAL ORIGIN UNDER THE CIVIL RIGHTS ACT, 42 U.S.C.A. §§ 2000e ET SEQ. (Title VII)

72.     Plaintiff repeats and incorporates by reference the allegations set for in Paragraphs 1-71 as though fully set forth here.

73.     The Civil Rights Acts prohibits employers from discriminating against  employees based on their race, ethnicity, or national origin.

74.     Defendant discriminated against Plaintiff, who is of Colombian national origin and Hispanic ethnicity, when it fired him in accordance with the company's repeated announced directives by high level executives to not employ people of Hispanic national origin.

75.     In doing so, Defendant acted maliciously and in reckless indifference to Plaintiff's right to be free from discrimination based on national origin or ethnicity.

:

76.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to damages, in an amount to be determined at trial, including but not limited to past and future lost wages, and compensation for his past and future emotional distress.

## COUNT II:

## DISCRIMINATION BASED ON ETHNICITY OR NATIONAL ORIGIN UNDER THE FLORIDA CIVIL RIGHTS ACT OF 1992 § 760.01, *ET  SEQ.*, FLORIDA STATUTES

77.     Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 - 71 as though fully set forth here.

78.     Plaintiff brings claims for unlawful discrimination on the basis of ethnicity and national original under § 760.01, *et seq.,* Florida Statutes, (the "Florida Civil Rights Act of 1992" or "FCRA").

79.     The FCRA prohibits employers prohibits employers from discriminating against employees based on their race, ethnicity, or national origin.

80.     Defendant discriminated against Plaintiff, who is of Colombian national origin and Hispanic ethnicity,  when it fired him in accordance with the company's repeated announced directives by high level executives to not employ people of Hispanic national origin.

81.     In doing so, Defendant acted maliciously and in reckless indifference to Plaintiff's right to be free from discrimination based on national origin or ethnicity.

82.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to damages, in an amount to be determined at trial, including but not limited to past and future lost wages, and compensation for his past and future emotional distress.

:

## COUNT III:

## RETALIATION UNDER THE CIVIL RIGHTS ACT,

## 42 U.S.C.A. §§ 2000e *ET SEQ.* (Title VII)

83.     Plaintiff repeats and incorporates by reference the allegations set for in
Paragraphs 1-71 as though fully set forth here.

84.     Title VII, 42 U.S.C.A § 2000e-3(a), prohibits employers from discriminating
against employees because the individual has opposed an unlawful employment practice under
Title VII.

85.     Plaintiff opposed Defendant's policy of discriminating against Hispanic job
applicants and employees.

86.     Ammann fired Plaintiff for opposing its unlawful practice of discriminating
against Hispanic job applicants and employees.

87.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to damages,
in an amount to be determined at trial, including but not limited to past and future lost wages,
and compensation for his past and future emotional distress.

## COUNT IV:

## RETALIATION UNDER THE FLORIDA CIVIL RIGHTS ACT OF 1992

88.     Plaintiff repeats and incorporates by reference the allegations set for in
Paragraphs 1-71 as though fully set forth here.

:

89.     The Florida Civil Rights Act of 1992, § 760.10 (7) prohibits employers from discriminating against employees because the individual has opposed an unlawful employment practice under the Act.

90.     Plaintiff opposed Defendant's policy of discriminating against Hispanic job applicants and employees.

91.     Ammann fired Plaintiff for opposing its unlawful practice of discriminating against Hispanic job applicants  and employees.

92.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to damages, in an amount to be determined at trial, including but not limited to past and future lost wages, and compensation for his past and future emotional distress.

## COUNT V:

## HOSTILE WORK ENVIORNMENT DISCRIMATION UNDER THE CIVIL RIGHTS ACT, 42 U.S.C.A. §§ 2000e ET SEQ. (Title VII)

93.      Plaintiff repeats and incorporates by reference the allegations set for in Paragraphs 1-71 as though fully set forth here.

94.     The Civil Rights Act prohibits discrimination resulting from a hostile work environment.

95.     Plaintiff is a member of a protected class, namely he is an individual discriminated against based on his national origin, i.e., that he is Colombian and of Hispanic ethnicity.

96.     Plaintiff was subjected to inappropriate and unwelcome conduct directed at individuals of Hispanic national origin.

:

97.     Ammann's workplace was permeated with discriminatory conduct, intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

98.     Mr. Radi's supervisors' discriminatory conduct occurred within the scope of their employment and under the supervision of Ammann.

99.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to damages, in an amount to be determined at trial, including but not limited to past and future lost wages, and compensation for his past and future emotional distress.

<u>**COUNT VI:**</u>

<u>**HOSTILE WORK ENVIORNMENT DISCRIMATION UNDER THE FLORIDA CIVIL RIGHTS ACT OF 1992**</u>

100.     Plaintiff repeats and incorporates by reference the allegations set for in Paragraphs 1-71 as though fully set forth here.

101.     The Florida Civil Rights Act of 1992 prohibits discrimination resulting from a hostile work environment.

102.     Plaintiff is a member of a protected class, namely he is an individual discriminated against based on his national origin, i.e., that he is Colombian and of Hispanic ethnicity.

103.     Plaintiff was subjected to inappropriate and unwelcome conduct directed at individuals of Hispanic national origin.

104.     Ammann's workplace was permeated with discriminatory conduct, intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

20

:

105.    Mr. Radi's supervisors' discriminatory conduct occurred within the scope of their employment and under the supervision of Ammann.

106.    As a result of Defendant's discriminatory conduct, Plaintiff is entitled to damages, in an amount to be determined at trial, including but not limited to past and future lost wages, and compensation for his past and future emotional distress.

WHEREFORE, Plaintiff, IVAN RADI, requests that judgment be entered by this Court in his favor against Defendant and providing the following relief:

A.    Finding the acts and practices complained of are in violation of the Civil Rights Act, and the Florida Civil Rights Act.

B.    Awarding Plaintiff damages caused by Defendant's acts described above, including but not limited to compensatory and punitive damages, front pay, back pay, costs, and attorney's fees and costs.

C.    Awarding Plaintiff interest, including prejudgment and post-judgment interest on the above mentioned sums.

D.    Awarding such other and further relief as the court deems equitable, just, and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

21

:

November 14, 2022

/s/ Jed R. Friedman
Jed R. Friedman
Florida Bar No. 337500
JED R. FRIEDMAN, P.A.
25 SE 2nd Avenue, Suite 716
Miami, FL 33131
305/375-0808
friedmanlawfirm@gmail.com

# EXHIBIT "A"

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Mr. Ivan Radi** | From: | **Miami District Office** |
|---|---|---|---|
| | c/o Jed R. Friedman, P.A., 25 SE 2nd Ave., Suite 716 | | 100 SE 2nd St, Suite 1500 |
| | **MIAMI, FL 33131** | | **Miami, FL 33131** |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2020-00709** | **Luis Olivares,** | **786-648-5816** |
| | **Investigator** | |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Roberto Chavez
08/16/2022

Enclosures(s)

**Roberto Chavez**
**Acting Director**

cc:   **David Steffen**
    **CONSTANGY, BROOKS,SMITH & PROPHETE, LLP**
    **100 N. Tampa Street, Suite 3350**
    **Tampa, FL 33601**
    **Lieven Van Broekhoven**
    **AMMAN AMERICA, INC.**
    **1125 SW 101st Rd**
    **PLANTATION, FL 33324**

    **Jed Friedman**
    **JED R. FRIEDMAN, P.A.**
    **25 SE 2nd Avenue Suite 716**
    **MIAMI, FL 33131**

EXHIBIT "B"

On Dec 19, 2018, at 2:42 PM, Radi, Ivan - RIv <Ivan.Radi@ammann-group.com> wrote:

Hi Lieven,

Last week I interviewed 6 persons for the positions mentioned above.

I choose the best two candidates and share with Gilvan & Mark, both agree.

Our intention is to hire them for the third week of January.

Attached please find their resumes and my impressions :

<u>Maria Ballestas</u>

- Dynamic
- Knowledge of SAP, other computer applications
- Consistent in her explanations
- Good experience
- Good communications skills
- Bilingual ( English -- Spanish )

<u>Claudia Antelo</u>

- Ability to demonstrate logical thinking
- Knowledge of SAP, other computer applications
- Confidence
- Commitment

- Trilingual ( Portuguese, Spanish and English )

Conditions :

- Starting date: January 14th, 2019
- Title: Financial/Adm Assistant
- Year Salary: US$ 60.000
- Vacation :
> 1 year  < 2 years  - 10 days
> 2 years  < 5 years – 15 days
> 5 years  – 20 days
- Health Plan Monthly: US$ 1.500
- Dental Plan Yearly: US$ 1.000
- Vision Plan
- Life Insurance 2 x salary
- 401K: Employer will match 100% Employee's contribution up to 6% base salary to be deposited in the 401k.

Under the range of salary we budgeted, our action plan has once established the workload and different functions distribute in order to efficient and proactive tasks.

Please your approval to proceed.

Rgds,


**Ivan Radi**
Chief Financial Officer

Ammann America Inc.
1125 SW 101St Rd Davie, FL 33324
P: +41 62 916 6404  I  M: +1 305 331 6606
ivan.radi@ammann-group.com I www.ammann-group.com
<image003.png>



<Maria Ballestas, MBA.docx>

<CLAUDIA ANTELO.docx>

EXHIBIT "C"

**De:** Van Broekhoven, Lieven - LVB <lieven.vanbroekhoven@ammann-group.com>
**Enviada em:** quarta-feira, 19 de dezembro de 2018 20:33
**Para:** Radi, Ivan - RIv <Ivan.Radi@ammann-group.com>
**Cc:** Pereira, Gilvan - PGi <gilvan.pereira@ammann-group.com>; Medeiros, Mark - Mdo <Mark.Medeiros@ammann-group.com>
**Assunto:** Re: Candidates for the CFO Assistant / Financial Assistant positions

Also, we can not have only Latino's. Need balance.

EXHIBIT "D"

**idarnavi@gmail.com**

| | |
|---|---|
| **From:** | Pereira, Gilvan - PGi |
| **Sent:** | Thursday, December 20, 2018 5:38 AM |
| **To:** | Van Broekhoven, Lieven - LVB; Radi, Ivan - RIv |
| **Cc:** | Medeiros, Mark - Mdo |
| **Subject:** | RES: Candidates for the CFO Assistant / Financial Assistant positions |
| | |
| **Importance:** | High |
| | |
| **Categories:** | Red category, Watch |

Dear Lieven,

Dear Lieven,

In the future structure we will have the following:

Cindy – will depart as soon as the new hires are on board.

Huey:
Will control all travelling for R9 (Flights, Hotels, Cars, etc)
Will support all Marketing and Communications related activities: Events, Visits, etc
Activities related to the Support for Gilvan
       Will Control expense reports of Gilvan´s direct reports
       Will Help Organize Gilvan´s agenda
       Will Control delivery of Monthly reports, Forecast and other deadlines that need to be met

Finance Admin
Accounts Payables
Accounts Receivables
Data Input
Payroll
Other Support activities related to Finance

Sales /After Sales Admin
Purchase Orders Placements (Data entry and Admin) for both parts and equipment
Invoicing
Sales Contracts / Sales Documents for both Parts and Equipment
Finance and LCs – All related activities must be executed by the Sales Admin to ensure we are able to sell and secure we get paid after shipment
Freight and logistics – Quote and organize freights for all shipments to and from the Hub for both Parts and Equipment
Other Related activities related to Sales and After Sales

So, additional to Huey we consider we need another two admins to start.
We have also planned for the future to hire an After Sales and Parts Admin, but this position will remain on hold. Once the volume starts we can verify the load of each of the three admins and decide when additional personnel is needed.

The Finance admin and the Sales Admin should be on board as soon as possible so we can start SAP training and they can be allocated as key users for the relevant areas.

Considering the Latino comment I ask Ivan to review the other candidates, so we avoid having too much individuals non US in the company.

@ Lieven

Please let us know if the above mentioned is ok or if you have any additional comment

Look forward to hear from you.

Best Regards

Gilvan

EXHIBIT "E"

**idarnavi@gmail.com**

| | |
|---|---|
| **From:** | Van Broekhoven, Lieven - LVB |
| **Sent:** | Wednesday, January 9, 2019 9:13 AM |
| **To:** | Pereira, Gilvan - PGi; Medeiros, Mark - Mdo; Radi, Ivan - RIv |
| **Cc:** | Weber, Beat - bwe; Song, Yik Huey - SYH; Seglias, Sascha - ssa; Van Broekhoven, Lieven - LVB |
| **Subject:** | New hires - admins support - Hub Americas |
| **Categories:** | Red category, Watch |

All,

I wish to restate the topic of hiring of admin and support staff one more time and, hopefully, the last time.

We are not hiring 2 new admin support persons immediately.
We are hiring one admin support person ( Hub / SAP / Processes ) person first.
New hire is to be " American " . Knowledge of Spanish is " nice " but is not needed.
Once new person is in place and trained, we will need to let go of Cindy ( make sure this is prepared properly )

Initially, the new admin person will be do all order entry into SAP and other Hub related process work.
Huey is the admin of Gilvan and will support Ivan with expense report checking, flight bookings, hotel bookings and other tasks that Gilvan gives her. Huey reports to Gilvan and, in matrix, works with Sylvia
Huey will also initially assist Beat with parts set up admin work until workload justifies a full time ASPS admin support or until the R9 parts support person in AAG has been eliminated.

Do not forget we still have admin support people in Brazil as well.
Once we are up and running, and if only if the need arises, we can hire a second support person. This person shall also be American.
( FYI, Hubs Singapore and Dubai have a total of 2 admin support people . You can compare this to total admin support people in USA + Brazil )

All interviews for all positions ( including admin support people ) are to be conducted by at least 2 persons, ideally by 3.
For the admin support roles that require SAP knowledge, I suggest that Lukas Schneider interviews the candidate as well ( Skype ) but only as it relates to SAP knowledge.
Lukas does not decide who we hire but he gives us his assessment of the candidate's suitability for Hub  / SAP work

Last but not least, I also wish to re highlighht that the Director for the Hub is Gilvan, not Lieven.
Ivan reports to Gilvan and in matrix to Sascha.
I am fully aware that some individuals think we have too many cooks in the kitchen,  the problem however is that those who feel this are the ones who create the cooks.

Lieven Van Broekhoven
Executive Vice President

Ammann Schweiz AG
Direct +41 62 916 61 61 | Mobile +41 79 938 98 84
Lieven.vanbroekhoven@ammann-group.com / www.ammann-group.com



EXHIBIT "F"

**idarnavi@gmail.com**

| | |
|---|---|
| **From:** | Thomschke, Jan - JTH |
| **Sent:** | Friday, January 18, 2019 2:13 PM |
| **To:** | Colin Price; Tesch, Günter - GT; Medeiros, Mark - Mdo; Krämer, Dietmar - KrD; Radi, Ivan - RIv |
| **Subject:** | Interviews with Electrical Engineers |

Dear All,

after having yesterday and today the three scheduled interviews with:

- Juan Rodriguez
- Mitchell Alexander
- Shawn Orlena

Ivan and myself decided relatively fast, that Juan Rodriguez ist he right candidate. He is open-minded and hungry to do a challenging job as an Electrical Eng. The whole conversation was good and we are sure the he fits in the North American Engineering team. Another advantage is, that he knew the industry (aggregate & mining) and would love to come back to this industry. He worked a lot on job-sides and is also able to do troubleshooting. Another advantage is, that he has a dual citizenship (US, Mexican) and speaks both languages fluently. We are also sure, that he is able to act in a global team.

I would like to handover to Ivan and Colin to get Juan Rodriguez on the Ammann board. It make sense, that we starts in March and not earlier. The first steps for Ammann will be in Europe (Switzerland, Germany). He will get a similar program was Devin and Matthew got and will mainly work in the beginning for the Development Project ContiHRT 300 t/h → 400 t/h.

Mit freundlichen Grüßen

Jan Thomschke

# EXHIBIT "G"

**idarnavi@gmail.com**

| | |
|---|---|
| **From:** | Pereira, Gilvan - PGi |
| **Sent:** | Monday, June 10, 2019 9:42 AM |
| **To:** | Radi, Ivan - RIv |
| **Cc:** | Van Broekhoven, Lieven - LVB |
| **Subject:** | NEW HEADCOUNT - TEMPORARY - FOR COLD CALLS ASPHALT PLANTS |

| | |
|---|---|
| **Importance:** | High |
| **Categories:** | Red category |

Dear Ivan,

As discussed last week we need to increase our efforts to accelerate our penetration in the Plants business in the US.

Based on this as discussed please accelerate the selection of an Intern, or a low cost person, to be exclusively dedicated to make cold calls and try to schedule meetings for Esquivel and Devonshire.

Must be native American, and speak absolutely fluent English. No accent to be accepted. 

If you have any doubt please let me know

Best Regards

Gilvan

EXHIBIT "H"

**idarnavi@gmail.com**

| | |
|---|---|
| **From:** | Van Broekhoven, Lieven - LVB |
| **Sent:** | Wednesday, June 12, 2019 5:00 PM |
| **To:** | Pereira, Gilvan - PGi; Radi, Ivan - RIv |
| **Subject:** | Re: Cold calls |

**Categories:**         Red category

Pls confirm receipt

Sent from my iPhone

> On Jun 12, 2019, at 16:11, Van Broekhoven, Lieven - LVB <lieven.vanbroekhoven@ammann.com> wrote:
>
> To ensure we do not end up with another hire that was not planned or a situation where instructions were purposely ignored :
>
> - we are looking for a temp worker for cold calls to asphalt producers in USA
> - can be a student
> - must be American from American origin 
> -  role is temporary
> - no title, no employment contract, no benefits.
> - on monthly contract basis only. A set weekly rate all inclusive.
> - we are not hiring a receptionist
> - we are not hiring a marketing person
> - we are not hiring an accounting person
>
>
> Cost agreed upfront  by Gilvan before we offer anything
>
> Contract to be signed by 2 persons
>
>
> Sent from my iPhone

# EXHIBIT "I"

| File | Name | Position | Start Date | National Origin | Work Place | Payroll | Status | Salary/Yr TUSD | Bonus $ | Vacations | Health Insuranc | Car Allow Yr TUSD | 401 K | Life Insuran |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Byron Mike | Service Manager | 7/1/2011 | Canada | Canada | Canada | Canadian | | com | 20 days | Yes | 14 | Yes | n/a |
| 2 | Leech James | Area Sales Manager Machines | 9/1/2014 | Canada | Canada | Canada | Canadian | | 20% | 20 days | Yes | 14 | Yes | 2xSal |
| 3 | McCown Steven | Commercial Mgr | 10/1/2015 | USA | USA/Washington | USA | US Resident | | 10% | 25 days | Yes | 7 | Match 6% | 2xSal |
| 4 | Song Huey | Executive Admin | 1/1/2018 | Singapore | USA/Florida | USA | US Resident | | 25% | 25 days | Aetna | n/a | Match 6% | 2xSal |
| 5 | Van Broekhoven Lieven | Executive VP | 2/1/2018 | Belgium | USA/Florida | USA | US Citizen | | 10% | 25 days | Aetna | 7 | Match 6% | 2xSal |
| 6 | Gulley Devin | Mechanical Eng | 3/12/2018 | USA | USA/Florida | USA | US Citizen | | 15% | 25 days | Aetna | n/a | Match 6% | 2xSal |
| 7 | Radi Ivan | CFO | 4/21/2018 | Colombia | USA/Florida | USA | US Citizen | | 10% | 25 days | Aetna | 7 | Match 6% | 2xSal |
| 8 | Frahm Matthew | Mechanical Eng | 8/13/2018 | USA | USA/Florida | USA | US Citizen | | 10% | 25 days | Aetna | n/a | Match 6% | 2xSal |
| 9 | Rhoten David | Service Eng | 8/27/2018 | USA | USA/Florida | USA | US Citizen | | n/a | 10/15/20 | Aetna | n/a | Match 6% | 2xSal |
| 10 | Perkins Christopher | Global Director Pre Sales | 1/1/2019 | USA | USA/Wisconsin | USA | US Citizen | | 25% | 15/20 | Aetna | 6 | Match 6% | 2xSal |
| 11 | Hernando Moises | After Sales Product Support Mgr | 1/3/2019 | Peru | USA/Florida | USA | US Citizen | | 10% | 10/15/20 | Aetna | 6 | Match 6% | 2xSal |
| 12 | Olivier Joann | Sales & Admin Support | 2/11/2019 | USA | USA/Florida | USA | US Citizen | | n/a | 10/15/20 | Aetna | n/a | Match 6% | 2xSal |
| 13 | Esquivel Moises | Area Sales Manager | 2/18/2019 | Honduras | USA/Florida | USA | US Citizen | | 15% | 10/15/20 | Aetna | 6 | Match 6% | 2xSal |
| 14 | Rodriguez Juan | Electrical Eng | 3/18/2019 | Mexico | USA/Nevada | USA | US Citizen | | 10% | 10/15/20 | Aetna | n/a | Match 6% | 2xSal |
| 15 | Neilson Chris | Area Sales Manager | 4/1/2019 | USA | USA/Florida | USA | US Citizen | | 15% | 15 days | Aetna | 6 | Match 6% | 2xSal |
| 16 | Sandoval Nelson | Wharehouse Operator | 4/30/2019 | Colombia | USA/Florida | USA | US Citizen | | n/a | 10/15/20 | Aetna | n/a | Match 6% | 2xSal |
| 17 | Devonshire Tom | Area Sales Manager | 5/3/2019 | USA | USA/Oklahoma | USA | US Citizen | | 15% | 20 days | Aetna | 6 | Match 6% | 2xSal |
| 18 | Amin Amir | Spare Parts Admin | 9/9/2019 | Guyana | USA/Florida | USA | US Citizen | | n/a | 10/15/20 | Aetna | n/a | Match 6% | 2xSal |
| 19 | Olson Tom | Distribution Manager | 9/9/2019 | Sweden | USA/Nebraska | USA | US Citizen | | 15% | 10/15/20 | Aetna | n/a | Match 6% | 2xSal |
| 20 | Remigi Raul | Service Eng | 9/23/2019 | Nicaragua | USA/Florida | USA | US Citizen | | n/a | 10/15/20 | Aetna | n/a | Match 6% | 2xSal |
| 21 | Lavenberg Paul | Sales Manager | 11/4/2019 | USA | USA/Pensylvania | USA | US Citizen | | 15% | 10/15/20 | Aetna | n/a | Match 6% | 2xSal |

| | | |
|---|---|---|
| Canada | 2 | 10% |
| USA | 9 | 43% |
| Europe | 2 | 10% |
| Latino | 6 | 29% |
| Other | 2 | 11% |